527 A.2d 183

Linda Ziccardi, Plaintiff *v.* Commonwealth of Pennsylvania, Department of General Services, Bureau of Buildings and Grounds et al., Defendants.

Submitted on briefs February 23, 1987, to Judges CRAIG and Doyle, and Senior Judge KALISH, sitting as a panel of three. Reconsidered August 6, 1987 before President Judge CRUMLISH, JR. and Judges CRAIG, MAC-PHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Andrew F. Erba,* with him, *Louis S. Rulli,* for plaintiff.

*Robert J. Schwartz,* Assistant Counsel, for defendant, Commonwealth of Pennsylvania, Department of General Services, Bureau of Buildings and Grounds, et al.

*Alaine S. Williams, Kirschner, Walters, Willig, Weinberg & Dempsey,* for defendants, American Federation of State, County and Municipal Employees, Council 13 and District Council 88, AFL-CIO.

OPINION BY JUDGE CRAIG, June 8, 1987:

On November 18, 1986, the Pennsylvania Supreme Court granted Linda Ziccardi's petition for the exercise of plenary jurisdiction and remanded this case to the Commonwealth Court for disposition of the Commonwealth's motion for judgment on the pleadings.

According to the pleadings, the Department of General Services of the Commonwealth of Pennsylvania employed Linda Ziccardi as a Clerk-Typist I until November 23, 1972. Ms. Ziccardi alleges that her supervisor, on more than one occasion, urged her to purchase a ticket to a "One Hundred Dollar Dinner" fundraiser sponsored by the Democratic Campaign Committee of Philadelphia. After she refused to purchase a ticket, the department terminated her employment, purportedly for "unsatisfactory work habits."

Ms. Ziccardi contacted her union representative and commenced grievance proceedings in accordance with the collective bargaining agreement then in effect. After exhausting the grievance procedures, the union and the Commonwealth proceeded to arbitrate Ms. Ziccardi's claim of wrongful termination. After an arbitrator determined that Ms. Ziccardi had been a permanent employee entitled to the protections of the collective bargaining agreement at the time of her dismissal, the union withdrew its request for arbitration, allegedly without securing Ms. Ziccardi's consent or giving her written notice.

On November 16, 1978, Ms. Ziccardi filed an original jurisdiction complaint in this court against the Commonwealth, the Secretary of General Services and her union. That complaint, as amended on February 26, 1979, contained seven counts as follows: Count 1—Action in assumpsit for breach of a collective bargaining agreement against the Commonwealth and the secretary; Count 2—Action in trespass for violation of

federal and state constitutional rights against the Commonwealth and the secretary; Count 3—Action in trespass for violation of the Civil Rights Act of 1871, 42 U.S.C. §1983, against the Commonwealth and the secretary; Count 4—Action in trespass for wrongful discharge against the Commonwealth and the secretary; Count 5—Action in equity for violation of 42 U.S.C. §1983 against the Commonwealth and the secretary; Count 6—Action in trespass for breach of duty of fair representation against the union; and Count 7—Action in trespass for discrimination against the union. In her counts against the Commonwealth and the secretary, Ms. Ziccardi demanded back pay, punitive damages and reinstatement. In her counts against the union, Ms. Ziccardi sought compensatory and punitive damages.

From that point, this case has had a lengthy procedural history. This court originally dismissed Ms. Ziccardi's complaint on the grounds that she had failed to exhaust administrative remedies (as against the Commonwealth) and that this court lacked jurisdiction (as against the union). We held that the Pennsylvania Labor Relations Board (PLRB) was the proper forum to compel the Commonwealth to arbitrate Ms. Ziccardi's claim of wrongful termination and that the PLRB had original jurisdiction over her claims against the union as an unfair labor practice under the Public Employment Relations Act (PERA).[1] *Ziccardi v. Pennsylvania Department of General Services,* 50 Pa. Commonwealth Ct. 367, 413 A.2d 9 (1980).

The Pennsylvania Supreme Court reversed this court's ruling in part in *Ziccardi v. Pennsylvania Department of General Services,* 500 Pa. 326, 456 A.2d 979 (1982), and remanded the case for further proceed-

---

[1] Act of July 23, 1970, P.L. 563, No. 195, *as amended,* 43 P.S. §§1101.101-1101.2301.

ings. Specifically, that court held that Ms. Ziccardi was not entitled to bring an action in equity and assumpsit against her employer for breach of the collective bargaining agreement (thus affirming the dismissal of counts 1 and 5) but that PERA did not bar counts 6 and 7 against the union; consequently, this court could not dismiss those counts for lack of jurisdiction. The Supreme Court also remanded this case for further consideration of the federal and constitutional issues , in counts 2, 3 and 4 against the Commonwealth and the secretary.

In January, 1984, this court denied the union's motion for judgment on the pleadings and overruled the Commonwealth's preliminary objections in an unreported opinion.

In September, 1984, Senior Judge KALISH denied the Commonwealth's motion for judgment on the pleadings and ruled that the statute of limitations did not preclude Ms. Ziccardi's cause of action. In November, 1984, this court granted reargument as to the Commonwealth's motion for judgment on the pleadings. On April 8, 1985, before the motion was reargued, the Commonwealth Court sua sponte transferred this case to the Court of Common Pleas of Dauphin County in light of the Supreme Court's ruling in *Balshy v. Rank*, 507 Pa. 384, 490 A.2d 415 (1985).[2]

In June, 1985, the Supreme Court, as noted above, granted Ms. Ziccardi's petition for the exercise of extraordinary jurisdiction and remanded the case to this court. Accordingly, we now reconsider the Commonwealth's motion for judgment on the pleadings.

---

[2] In *Balshy,* the Pennsylvania Supreme Court concluded that "there exists a legislative intent that all actions against the Commonwealth or its officers acting in their official capacity, asserting tort liability, are outside the original jurisdiction of the Commonwealth Court." 507 Pa. at 394, 490 A.2d at 420.

In review, we note that the Supreme Court's remand of this case, as it relates to the Commonwealth and the secretary, is for the consideration only of counts 2, 3, and 4 of Ms. Ziccardi's amended complaint. The Commonwealth's motion states four reasons why Ms. Ziccardi's complaint should be dismissed: (1) the statute of limitations precludes Ms. Ziccardi's cause of action because her complaint was not timely filed; (2) her "appeal" should be "quashed" for failure to petition for review within thirty days of the department's final order with regard to Ms. Ziccardi's discharge; (3) sovereign immunity; and (4) official immunity.[3]

### A.  STATUTE OF LIMITATIONS

The United States Supreme Court ruled, in *Wilson v. Garcia*, 471 U.S. 261 (1985), that the state limitation period for a personal injury action controls causes of action brought under section 1983. The Commonwealth contends that *Wilson* requires the dismissal of Ms. Ziccardi's cause of action under Pennsylvania's two-year statute of limitation for personal injury actions.[4] Ms. Ziccardi, however, argues that *Wilson* should not be applied retroactively to bar her complaint, which was filed at a time when she reasonably believed that the six-year statute of limitations applied.[5]

The Supreme Court has announced in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), the criteria by which to judge whether its decisions are to be applied retroactively:

---

[3] The Commonwealth's motion also states that Ms. Ziccardi's complaint in equity should be dismissed. However, that portion of the complaint was dismissed in the Supreme Court's opinion in *Ziccardi v. Pennsylvania Department of General Services*, 500 Pa. 326, 456 A.2d 979 (1982).

[4] Section 5524 of the Judicial Code, 42 Pa. C. S. §5524.

[5] Section 5527 of the Judicial Code, 42 Pa. C. S. §5527.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[where] a decision of this court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for voiding the "injustice" by a holding of nonretroactivity.'

404 U.S. at 106-07 (citations omitted). Accordingly, we must evaluate Ms. Ziccardi's claim in light of these factors.

### 1. The Change from Previous Law

We first examine the treatment of section 1983 claims under Pennsylvania's statutes of limitations scheme during the six years after Ms. Ziccardi's cause of action arose. Initially, federal courts split on the question of whether the two-year statute of limitations for personal injury actions or the six-year general statute of limitations applied to employment discrimination cases.[6] However, in 1977, the Third Circuit Court of

---

[6] Cases which held that the two-year statute of limitations applied: *Davis v. United States Steel Supply,* 405 F. Supp. 394 (W.D. Pa. 1976), *rev'd* 581 F.2d 335 (3rd Cir. 1978); *Presseisen v. Swarthmore College,* 386 F. Supp. 1337 (E.D. Pa. 1974); *Wilson v. Sharon Steel Corp.,* 399 F. Supp. 403 (W.D. Pa. 1975), *aff'd in part, vacated in part and remanded,* 549 F.2d 276 (3rd Cir. 1977);

Appeals announced that the two-year statute of limitations should apply only to those actions seeking damages for bodily injuries and that the six-year statute of limitations applied to a section 1982 housing discrimination .claim. *Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894 (3rd Cir. 1977).

Subsequently, the court of appeals relied on the *Meyers* decision to uphold the six-year statute of limitations in a section 1983 case in which the plaintiff alleged that he had been wrongfully dismissed from his employment in violation of his First Amendment rights. *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3rd Cir. 1978). Although the Third Circuit Court of Appeals decided *Skehan,* which is analogous to Ms. Ziccardi's case, just after the six-year statute of limitation would have expired on her cause of action, *Meyers* was a sufficiently clear pronouncement by the Third Circuit to alert the parties that Ms. Ziccardi's cause of action could be subject to a six-year, and not the two-year, statute of limitations.

The law as declared by the Third Circuit Court of Appeals from *Meyers,* decided in 1977, until *Wilson,* decided in 1986, was that section 1983 claims such as Ms. Ziccardi's are subject to the six-year statute of

---

*Gozdanovic v. Civil Service Commission,* 361 F. Supp. 504 (W.D. Pa. 1973).

Cases which held that the six-year statute of limitations applied: *Cap v. Lehigh University,* 433 F. Supp. 1275 (M.D. Pa. 1977); *Groves v. Insurance Co. of North America,* 433 F. Supp. 877 (E.D. Pa. 1977); *Pinckney v. Northampton County,* 433 F. Supp. 373 (W.D. Pa. 1976); *Dupree v. Hertz Corp.,* 419 F. Supp. 764 (E.D. Pa. 1976); *Beamon v. Saunders,* 413 F. Supp. 1167 (E.D. Pa. 1976); *Fontaine v. Tasty Baking Co.,* 20 F.R.D.2d 490 (E.D. Pa. 1975); *Dudley v. Textron,* 386 F. Supp. 602 (E.D. Pa. 1975); *Jones v. United Gas Improvement Corp.,* 383 F. Supp. 420 (E.D. Pa. 1974); *Yatzor v. Allen,* 365 F. Supp. 875 (W.D. Pa. 1973), *aff'd,* 503 F.2d 1400 (3rd Cir. 1974), *cert. denied,* 420 U.S. 929 (1975).

limitations. *See Skehan; Knoll v. Springfield Township School District,* 699 F.2d 137 (3rd Cir. 1983), *cert. granted,* 468 U.S. 1204 (1984), *vacated per curiam,* 471 U.S. 288 (1985), *on remand,* 763 F.2d 584 (3rd Cir. 1985); *Perri v. Aytch,* 724 F.2d 362 (3rd Cir. 1983); *Fitzgerald v. Larson,* 741 F.2d 32 (3rd Cir. 1984).

*Wilson,* therefore, overrules the past precedents of the Third Circuit—a factor which compels a nonretroactive application of that decision.

### 2. *The Purpose of Wilson*

In concluding that the state statutes of limitations for personal injuries should apply to section 1983 claims, the Supreme Court stated that "[t]he federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach." *Wilson,* 471 U.S. at 275.

By allowing Ms. Ziccardi's cause of action to stand, this court would, admittedly, detract from the uniformity of treatment of section 1983 claims which the Supreme Court sought to achieve in *Wilson.* However, as Ms. Ziccardi argues, the number of pre-*Wilson* section 1983 claims still pending in the courts is limited. Any deviation from the application of the state's two-year statute of limitations is only temporary as state and federal courts pass through the transitional stage between pre- and post-*Wilson* section 1983 claims. We conclude therefore, that, although a nonretroactive application of *Wilson* would retard the policy espoused in that case, such retardation has a negligible impact.

### 3. *The Equities of Retroactive Application of Wilson*

As determined from examining the 1972-1978 federal case law, although the status of the law during that period was not entirely clear, the Third Circuit Court of

Appeals' pronouncement in _Meyers_ and subsequent decisions provided reasonable grounds for the parties to believe that Ms. Ziccardi's cause of action was litigable when she filed her complaint. Dismissal of Ms. Ziccardi's cause of action, on the basis of a Supreme Court opinion decided eight years after she filed her complaint, would be an inequitable result.

Consequently, because the _Chevron_ criteria favor a nonretroactive application of _Wilson_,[7] we must apply the six-year statute of limitation in effect when Ms. Ziccardi filed her complaint and conclude that her complaint was timely filed.[8]

## B. PETITION FOR REVIEW

The Commonwealth next contends that Ms. Ziccardi's complaint should be dismissed because she did not file a petition for review within thirty days of

---

[7] We acknowledge the Third Circuit Court's statement in _Smith v. City of Pittsburgh_, 764 F.2d 188 (3rd Cir.) _cert. denied_, 106 S.Ct. 349 (1985), that "[a]s of [March 1982], this court had not chosen the appropriate Pennsylvania statute of limitations for a claim of unconstitutional termination of employment without due process" which seemingly undermines that court's rulings in _Meyers_ and _Skehan_. However, even if we treat _Smith_ as the first clear resolution of the statute of limitations question, the pre-_Smith_ irresolution of that issue still compels a nonretroactive application of _Wilson_ under the _Chevron_ analysis.

[8] The Commonwealth also contends that the six-month notice and limitation period established in section 5522 of the Judicial Code, 42 Pa. C. S. §5522, for civil actions against government officers precludes Ms. Ziccardi's cause of action. Section 25(a) of the Act of July 9, 1976, P.L. 586, No. 142, provides a one-year savings clause for civil actions pending during the enactment of the act containing section 5522. Because section 5522 originally became effective on June 27, 1978, and Ms. Ziccardi filed her complaint approximately five months later, her claim falls within the savings clause of the act and, therefore, is not subject to the six-month limitations period.

the occurrence of any event which could be construed as the department's "final order" pursuant to Pa. R. A. P. 1512. The Commonwealth, in making this contention, confuses Ms. Ziccardi's original jurisdiction action with an appeal from an admistrative adjudication. Pa. R. A. P. 1501, which defines those cases for which review may be petitioned, does not embrace a petition filed in an original trespass action against a government agency. Consequently, the thirty-day limitation of Rule 1512 does not apply to Ms. Ziccardi's cause of action.

Moreover, because the demand here against the Commonwealth is for money damages, Pa. R. A. P. 1561(c) expressly negates the applicability of the petition-for-review mode of Chapter 15 of the Rules of Appellate Procedure with respect to such a claim.

## C.   SOVEREIGN IMMUNITY

The Commonwealth next argues that the doctrine of sovereign immunity bars Ms. Ziccardi's cause of action.

In Count 3 of her amended complaint, Ms. Ziccardi avers that the Commonwealth wrongfully discharged her from her employment in violation of section 1983 of the Federal Civil Rights Act of 1871. Section 1983 subjects every "person" who deprives another person of any of the rights, privileges or immunities secured by the United States Constitution to a civil proceeding for the redress of injuries. Federal courts have held, however, that the Commonwealth is not a "person" subject to a suit for damages under section 1983. *Thompson v. Burke*, 556 F.2d 231 (3rd Cir. 1977); *Fear v. Commonwealth of Pennsylvania*, 413 F.2d 88 (3rd Cir.), *cert. denied*, 396 U.S. 935 (1969). Consequently, we need not address the issue of sovereign immunity regarding Count 3 of the amended complaint because that count does not state a cause of action against the Commonwealth as a matter of law.

The remaining counts in trespass in Ms. Ziccardi's amended complaint against the Commonwealth aver that the Commonwealth discharged her from her employment in violation of the rights secured under the First and Fourteenth Amendments of the United States Constitution and art. 1, §7 of the Pennsylvania Constitution. If such a cause of action against the Commonwealth, sounding in terms of the tort of wrongful discharge, falls outside the section 1983 claims, it nevertheless constitutes a cause of action to which the Commonwealth's sovereign immunity is applicable.[9]

Consequently, because the Commonwealth is not a proper defendant in a section 1983 action, and because the legislature has not waived sovereign immunity for claims of wrongful discharge, we must dismiss Ms. Ziccardi's complaint against the Commonwealth.

## D. OFFICIAL IMMUNITY

The Commonwealth argues that Ms. Ziccardi's complaint should be dismissed against the Secretary of General Services because the alleged wrongs fall within the scope of his official immunity. Section 8524(3) of the Judicial Code, 42 Pa. C. S. §8524(3), permits the secretary to claim, as a defense, that his termination of Ms.

---

[9] Our analysis on this point is controlled by the common law concept of sovereign immunity which existed before the Pennsylvania Supreme Court's abrogation of that doctrine in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). *See Commonwealth v. Orsatti*, 448 Pa. 72, 292 A.2d 313 (1972). The legislature, for the first time, enacted statutory sovereign immunity in Act 152, Act of September 28, 1978, P.L. 788, §§1 et seq. However, our Supreme Court, in *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980), ruled that the act could not be applied retroactively to actions which occurred and were in existence before the passage of the act. Because Ms. Ziccardi's cause of action arose in 1972, we cannot consider the statutory immunity.

Ziccardi's employment was within the discretion granted to him by statute.

However, neither the Judicial Code nor the official immunity tests of *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), are applicable in section 1983 cases.

The United States Supreme Court has declared that the federal interest in securing individual constitutional rights exceeds the state's interest in immunizing public officials from civil liability:

> [S]ince Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another of a federal right under the color of state law. Ex parte Young teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. (Citations omitted)

*Scheuer v. Rhodes,* 416 U.S. 232, 237 (1974).

Federal courts have applied only a qualified immunity on behalf of Commonwealth officials in section 1983 claims. In a section 1983 action against the Secretary of Transportation, the United States District Court for the Eastern District of Pennsylvania declared:

> [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the of-

fice and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

*Strathie v. Department of Transportation,* 547 F. Supp. 1367, 1376 (E.D. Pa. 1982), *vacated and remanded on other grounds,* 716 F.2d 227 (3rd Cir. 1983), *quoting Scheuer v. Rhodes.* However, the United States Supreme Court has held that official immunity would not be available if the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of [the person] affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to [a person]." *Wood v. Strickland,* 420 U.S. 308, 332 (1975).

Pursuant to the *Strathie* analysis, if the scope of responsibility of the secretary does not require him to exercise some degree of discretion, the qualified immunity for executive officers would be inapplicable. A review of the Administrative Code indicates that the secretary is required to exercise discretion and independent judgment in his decisionmaking.[10] Therefore, the position held by the secretary is one to which the qualified immunity applies.

Having determined that the nature of the secretary's position warrants a qualified immunity, the question of

---

[10] Section 206 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §66, confers on the Secretary of General Services the authority to exercise the powers and perform the duties vested in the Department of General Services—clearly a very broad authority.

whether that immunity applies in the present case rests on a factual determination concerning the nature of the secretary's actions. Specifically, under the United States Supreme Court's pronouncement in *Wood*, the immunity defense would be unavailable to the secretary if the constitutional rights which he allegedly infringed were clearly established at the time of the challenged conduct, if he knew or should have known of the right in issue, or if he knew or should have known that his conduct violated the constitutional norm. *Wood*, 420 U.S. at 321-325.

Accordingly, we must deny the Commonwealth's motion to dismiss Ms. Ziccardi's complaint on the ground of the secretary's official immunity because Ms. Ziccardi's complaint alleges facts which, if proven to be true, would strip the secretary of his qualified immunity.

## E.    CONCLUSION

Because Count 3 (the section 1983 claim) of Ms. Ziccardi's amended complaint does not support a cause of action against the Commonwealth and because sovereign immunity precludes her suit against the Commonwealth under Counts 2 and 4 of the amended complaint, we grant the Commonwealth's motion for judgment on the pleadings in favor of the Commonwealth, Department of General Services.

This case is distinguishable from *Martino v. Transport Workers' Union of Philadelphia Local 234*, 505 Pa. 391, 480 A.2d 242 (1984), and *Fleck v. AFSCME, District Council 90*, 106 Pa. Commonwealth Ct. 330, 526 A.2d 834 (1987), in which motions to dismiss were denied as against the Southeastern Pennsylvania Transportation Authority and the Commonwealth respectively. The distinguishing feature is the remedy sought. Our Supreme Court announced the principle in *Martino*,

which we applied in *Fleck,* that an aggrieved public employee may join his employer as an additional defendant in an equity action against his union for the breach of the duty of fair representation in order *to compel* the participation of the employer in *arbitration nunc pro tunc.* In the present case, however, where Ms. Ziccardi brings a trespass action against the Commonwealth only for damages, we must grant the Commonwealth's motion to dismiss.

We deny the Commonwealth's motion for judgment on the pleadings in favor of the Secretary of General Services because an evidentiary hearing is necessary to determine the applicability of the secretary's qualified official immunity.

## ORDER

NOW, June 8, 1987, the Commonwealth's motion for judgment on the pleadings is granted as to the Commonwealth of Pennsylvania, Department of General Services, and denied as to the Secretary of General Services.

---

### 531 A.2d 864

OPINION BY JUDGE CRAIG, October 1, 1987:

This court has reconsidered the sovereign immunity basis on which the court's opinion and order of June 8, 1987 granted the Commonwealth's motion for judgment in its favor on the pleadings, with respect to Petitioner Ziccardi's state and federal law claims against the Commonwealth, other than those based on Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. §1983. Counts 2 and 4 of Ziccardi's original jurisdiction petition are the counts under reconsideration.

Not being reconsidered, and therefore confirmed, are this court's holdings in the June 8, 1987 opinion and order (1) that the §1983 claims in Counts 3 and 5

against the Commonwealth and its department secretary are not barred by any statutory time limitation, (2) that those claims are barred against the Commonwealth because it is not a "person" within the meaning of §1983, and (3) that such claims are subject to the secretary's qualified immunity.

Earlier the Supreme Court of Pennsylvania affirmed, on different grounds, this court's dismissal of Count 1, filed by Ziccardi against the Commonwealth for breach of a collective bargaining agreement. *Ziccardi v. Pennsylvania Department of General Services,* 500 Pa. 326, 456 A.2d 979 (1982), *rev'g in part Ziccardi v. Pennsylvania Department of General Services,* 50 Pa. Commonwealth Ct. 367, 413 A.2d 9 (1980).

The two remaining counts of the seven-count petition, Counts 6 and 7 raising claims of inadequate representation and discrimination against the petitioner's union, are here by remand order of the Supreme Court; being triable in this court so long as pendent jurisdiction continues to be applicable to them by reason of any viable action against the Commonwealth or the secretary in this court.

Hence the sole question upon reconsideration is: Where, on a cause of action which arose November 23, 1972, a petitioner has filed suit in this court on November 16, 1978, is the bar of the Commonwealth's common-law sovereign immunity absent by virtue of Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978) and Gibbon v. Commonwealth, 490 Pa. 156, 415 A.2d 80 (1980)?

In our opinion of June 8, 1987, this court correctly held that, under *Gibson,* the statutory sovereign immunity enacted by Act 152, Act of September 18, 1978, P.L. 788 §§1 et seq., could not be applied retrospectively to

causes of action which arose before the September 18, 1978 effective date of that statute.

However, that June 8, 1987 opinion failed to note that the Supreme Court, in *Gibson,* clearly held that the abrogation of the judicial doctrine of sovereign immunity in *Mayle* operated retrospectively so that causes of action which accrued before the *Mayle* decision are not subject to common law sovereign immunity.

> Specifically, in *Gibson,* the Supreme Court stated [T]his Court has already applied Mayle to those cases pending in the court on the date of the Mayle decision. . . . There is no principled reason to discriminate now against appellants whose causes also accrued before Mayle, but whose complaints were filed post-Mayle. . . .

490 Pa. at 165, 415 A.2d at 85. That language is precisely applicable to the present case, in which the cause of action arose in 1972, before the July 14, 1978 date of the *Mayle* decision, and in which the date of filing came after *Mayle,* on November 16, 1978.

Therefore, with respect to the status of the Commonwealth under the doctrine of sovereign immunity in this case, these statements replace contrary statements in our June 8, 1987 opinion. The order of this court must be modified accordingly, to deny the Commonwealth's motion for judgment on the pleadings not only as to the Secretary, but also as to the Commonwealth itself.

### ORDER

Now, October 1, 1987, the order of this court dated June 8, 1987 is hereby amended to order that the Commonwealth's motion for judgment on the pleadings is denied as to the Commonwealth of Pennsylvania, Department of General Services, as well as to the Secretary of General Services.