550 A.2d 283

Alvin Nichols, Appellant *v.* Southeastern Pennsylvania Transportation Authority and International Brotherhood of Transit Police, Appellees.

Argued June 13, 1988, before Judges CRAIG and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Susan Warner*, for appellant.

*Nicholas J. Staffieri*, for appellee, Southeastern Pennsylvania Transportation Authority.

OPINION BY JUDGE CRAIG, November 16, 1988:

Employee Alvin Nichols appeals from an order of the Court of Common Pleas of Philadelphia County which sustained the preliminary objections of employer Southeastern Pennsylvania Transportation Authority (SEPTA) and dismissed Nichols' complaint and civil action with prejudice in favor of SEPTA, because (1) the complaint incorrectly averred that SEPTA is an employer as defined in the Labor Management Relations Act of 1947 (LMRA)[1] instead of the Public Employee Relation Act (PERA),[2] and (2) Nichols did not expressly allege bad faith and collusion between SEPTA and the International Brotherhood of Transit Police, his union.

SEPTA had employed Nichols as a transit policeman from 1981 until his discharge on February 5, 1986. On August 12, 1985, Nichols suffered a back and neck inju-

---

[1] 29 U.S.C. §152(2) (1974).

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.301(1).

ry in the ordinary course of his employment which led to his filing a workmen's compensation claim against SEPTA. He received compensation benefits until his return to work on January 30, 1986, after SEPTA's medical department declared him eligible to do so. That day, Nichols reinjured his back when he slipped and fell on ice on SEPTA's premises.

The Philadelphia Police Department transported Nichols to the Temple University Hospital Emergency Room where the attending physician advised Nichols to rest for seven days. On January 31, he reported to SEPTA's medical department, which cleared him for "light duty" assignments. However, Nichols did not report for duty after advising the chief deputy that he was medically unable to work.

On February 3, 1986, Nichols saw an orthopedic specialist following the instructions of his private physician, but failed to report to SEPTA's medical department for physical examination that day because of an alleged excessive wait at the specialist's office. SEPTA discharged Nichols on February 5, 1986 for failure to comply with orders.

Nichols contends that SEPTA unlawfully discharged him as a result of a plan to defeat a claim for new or additional workmen's compensation benefits. The union filed grievances and proceeded through step 3 of the grievance procedure specified in the collective bargaining agreement. The fourth and final step is filing for an arbitration hearing within thirty days, and the union must do that filing.

Despite assurances by the union that it would file for the arbitration hearing, no filing occurred until Nichols himself filed, twenty days beyond the deadline, after he learned that the union had failed to file. Arbitrator Parker ruled that the grievance was not arbitrable because of the untimely filing and the union's failure to adhere to the procedural requirements.

Nichols filed his complaint in civil action on December 12, 1986, seeking judgment against SEPTA and the union. SEPTA filed a motion to determine preliminary objections, seeking to strike the complaint and dismiss the civil action. On February 4, 1987, Nichols filed an "answer" to SEPTA's preliminary objections, which included alterations he described, in an accompanying memorandum, as amendments to his complaint.

After the trial court's dismissal order, Nichols filed a petition for reconsideration, seeking leave to file a motion which would, in effect, treat the action as one in equity to compel arbitration nunc pro tunc against SEPTA as a party defendant. He contends that the dismissal of SEPTA with prejudice left him with no adequate remedy at law, and that a court sitting in equity would permit him to join his public employer and union in an action to compel arbitration, where the plaintiff avers that the union breached its duty of fair representation and bad faith. The trial court denied the petition for reconsideration without addressing any of the allegations.

Nichols appeals to this court to reverse his dismissal and remand with a directive to allow amendments to his complaint.

Pa. R.C.P. No. 1033 provides that:

A party, either by filed consent of the adverse party or by leave of court, *may at any time* change the form of action, correct the name of a party or amend his pleading. (Emphasis added.)

Moreover, Pa. R.C.P. No. 126 adds that:

The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

SEPTA contends that Pa. R.C.P. No. 1028(c) is definitive in that "[a] party may file an amended pleading as of course within ten (10) days after service of a copy of preliminary objections." However, that rule only confines the automatic right to amend to the ten-day period. Pa. R.C.P. No. 1028(c) does not prohibit a party from amending his pleading *at any time by leave of court*.

Should the trial court have granted Nichols leave to file an amended complaint? The first pleading amendment to be considered is Nichols' request, concurring with SEPTA, that the PERA be relied upon instead of the LMRA.

In Nichols' complaint, he averred that both SEPTA and the union are governed by the LMRA. SEPTA averred that it is not "an employer" under the LMRA and that the union is not a "labor organization" under that Act. Nichols then altered his position by responding in his "answer" that his cause of action was not based on a violation of the LMRA, but rested upon the PERA. The opinion by the trial judge includes a conclusion that SEPTA is "not an 'employer' as defined by the Labor Management Relations Act of 1947," rejecting the "answer" submitted by Nichols.

The next question is whether Nichols had to amend his complaint to aver facts which would sufficiently indicate that his union breached its duty of fair representation for failing in bad faith to pursue the arbitration provision of the collective bargaining agreement.

Nichols, having been "an individual employed by a public employer," qualified as a public employee under section 301(2) of the PERA. A discharged public employee has a right to sue his union for failure to proceed to arbitration when the complaint alleges bad faith. *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982), *remanded in part*, 109 Pa. Commonwealth Ct.

628, 527 A.2d 183 (1987), *modified*, 109 Pa. Commonwealth Ct. 644, 531 A.2d 864 (1987). Although the union must be given broad discretion in determining whether to pursue the arbitration remedy, *Ziccardi* at 330, 456 A.2d at 981, the *Ziccardi* court's opinion also foresaw the situation before us, where there can be averments to the effect "that the employer actively participated in the union's bad faith, or conspired with it to deny the employee job protection accorded him by the collective bargaining agreement." *Ziccardi* at 332, 456 A.2d at 982.

Before a court in equity may entertain a complaint seeking to order arbitration, (as Nichols seeks to do here by amendment under Pa. R.C.P. No. 1502 and Pa. R.C.P. No. 1033) the complainant must allege that the union acted in bad faith toward its member.

> Once it has been determined that the union breached its duty of fair representation, the Court of Common Pleas sitting in equity may order the completion of the arbitration procedure and, in cases governed by state labor law its power is limited to that remedy.

*Martino v. Transport Workers' Union of Philadelphia, Local 234*, 505 Pa. 391, 409-10, 480 A.2d 242, 252 (1984).

Pa. R.C.P. No. 1019(b) directs that "[a]verments of fraud or mistake shall be averred with particularity." The trial court ruled that Nichols failed to allege bad faith with any specificity. However, in the complaint, Nichols made the following allegations:

> 22. Defendant's [SEPTA] termination of Plaintiff's employment was implemented and carried out by Defendant with the specific intention of harming, injuring and retaliating against Plaintiff because Defendant believed, expected and/or feared that he was about to make a

claim for workmen's compensation benefits against Defendant. . . .

24. [Defendant] embarked upon and carried out a plan, scheme or stratagem that was designed to suppress, hide and conceal from Plaintiff that Defendant had fired Plaintiff because of Defendant's belief, and expectations that Plaintiff was going to file a claim for worker's [sic] compensation benefits under the Act.

25. Pursuant to the scheme, plan or stratagem, Defendant knowingly and intentionally made material misrepresentations of fact to Plaintiff concerning the reasons why he had been discharged by Defendant.

Although the phrase "bad faith" does not appear as such in those allegations, the words unmistakably indicate bad faith and fraud in the actions.

Furthermore, Nichols also avers in his complaint that:

35. Despite the Union's assurances that such step was being taken, the Union did not file at all for the American Arbitration hearing.

36. This was done with knowledge that the Union was the only representative entitled to file for the American Arbitration hearing under the Collective Bargaining Agreement.

Again, these words import bad faith, in the sense of misrepresentation, by the union.

Our analysis supports a conclusion that Nichols can plead a valid cause of action. Therefore, although Nichols should have properly filed a motion to amend, he should be given leave to amend his complaint to cite the PERA as the controlling statutory guideline, to aver "bad faith" expressly, and to request equity relief.

Because we are remanding this case in furtherance of equitable relief, there is no need to address Nichols'

request that he be permitted to bring an action in tort against SEPTA and the union as an alternative action.

Accordingly, we remand this case to the court of common pleas for the purpose of allowing the parties to litigate the issue of alleged bad faith breach of duty of fair representation. Additionally, we reverse the trial court's failure to address Nichols' request to amend his pleadings and direct that he be permitted to do so pursuant to Pa. R.C.P. No. 1033.

## ORDER

NOW, November 16, 1988, the order of the Court of Common Pleas of Philadelphia County, No. 4735, October Term, 1986, dated February 20, 1987, is reversed and the case is remanded with a direction that Alvin Nichols be permitted to amend his complaint as described in the foregoing opinion.

Jurisdiction relinquished.

Judge MACPHAIL did not participate in the decision in this case.